## East Jellico Coal Company v. Closterides.

(Decided October 7, 1915.)

### Appeal from Bell Circuit Court.

1. Mines and Minerals—Duty of Master to Keep Roof of Entry in Repair.—Where the duty is not imposed on the servant to inspect or prop the roof of the entry, it is the duty of the master to exercise ordinary care to keep it in a reasonably safe condition.
2. Evidence—When Witness May Describe Conditions Where an Accident Occurred, Although Not Present.—A witness who was not present when an accident in a mine happened, but was familiar with the conditions at the place where the accident occurred, both before and after the accident, may describe these conditions.

BLACK, BLACK & OWENS for appellant.

JAMES M. GILBERT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

In a suit brought by the appellee to recover damages for personal injuries sustained while working as a laborer in the mine of the appellant company, there was a judgment in his favor for one thousand dollars.

It appears from the evidence that the appellee and two other men were engaged in shooting up the slate in the bottom of an entry of the mine so that the bottom might be lowered about six feet. When these men had gotten about the required depth, appellee was injured by a piece of slate falling on him.

The coal company contended that this slate fell from the side of the wall which was left standing as the men cleaned out the bottom of the entry; while appellee and the witnesses in his behalf said that it fell from the roof of the entry. There was evidence supporting both views;

and the jury were told in the instructions that if the slate which injured the appellee fell from the roof of the entry, they should find for appellee, but if they believed that it came from the side of the entry, they should find for the coal company. So that this issue was fairly submitted to the jury, and evidently the jury found that the slate fell from the roof of the entry.

The court further instructed the jury that it was the duty of the coal company to exercise ordinary care to keep the roof of this entry in reasonably safe condition, and if they believed that its failure to do this resulted in the injury to appellee, they should find a verdict in his favor. We think under the evidence this instruction was proper. The appellee could not speak English. He was near-sighted and not in the habit of doing any work about the mine that required skill or training. It was no part of his business or duty to look after the condition of the roof at the place where he was working, and the company had other men employed to inspect the roof. Under these circumstances it was clearly the duty of the coal company to exercise the degree of care pointed out in the instruction to keep the roof of this entry in a reasonably safe condition. There is sharp conflict in the evidence as to whether it performed this duty. Witnesses in behalf of appellee gave evidence tending to show that it did not, while the evidence for the coal company was to the effect that it exercised the requisite care.

It is complained that the trial court erred in giving any instruction on the duty of the coal company to keep the roof of the entry in safe condition, because it is said the place where the appellee was working was being made continually unsafe by the character of work he was doing and therefore the doctrine of safe place had no application to the case: Eagle Coal Co. v. Patrick's Admr., 161 Ky., 333.

It is very doubtful, under the facts of this case, if, under any circumstances, an instruction should have been giving advising the jury that they should find for the coal company if they believed appellee and those with whom he was working created the danger which resulted in his injury. But if we should assume that such an instruction might properly have been given, the reason for giving it was entirely removed by the instruction telling the jury that they should find for the coal company if they believed that the slate fell from the side and not the roof

of the entry. If the entry was being made unsafe at all by the labors of appellee, it was the side and not the roof of the entry that was affected by his labors, and consequently the instruction given by the court presented very clearly the defense of the coal company.

Some question is made about the refusal of the court to give certain instructions offered by counsel for appellant, but we do not think the court committed error in refusing these instructions. Our opinion is that the instructions given fairly presented to the jury the law of the case and submitted the real defenses made by appellant, which were that the slate fell from the side and not the roof of the entry and that the appellee was guilty of contributory negligence.

On the trial of the case witnesses for appellee were allowed to describe the place from which the slate fell, although it appears they were not present when it fell and only knew the place from which it fell through their knowledge of the condition of the slate before and after the accident. This evidence was objected to, and its admission is now urged as a ground for reversal.

As illustrating the character of this evidence, Tom Anderson, a witness for appellee, said that on the evening of the day that appellee was injured, and probably four or five hours after the accident, he had pointed out to him the place from which the slate fell. He further said that he was one of a crew of men working in a night shift at the place where appellee worked in the day time, and that the night before appellee was injured he noticed some loose slate in the roof of the entry, and on the next evening when he went into the mine to work he discovered that some of this loose slate had fallen from the roof and was told that the appellee was injured by the slate that fell from this place.

Other miners who worked at the place where appellee was injured also said that the day before the injury they discovered loose slate in the roof of the mine over the place where appellee was working when hurt, and that a few hours after he was hurt they discovered that a part of this loose slate had fallen. The witnesses who gave this character of evidence were not present when the slate fell or when appellee was hurt, but appellee, as well as other witnesses, described the place where he was when the slate fell, and the unsafe place in the roof, as described

by the witnesses who knew the condition of the slate before and after the accident, corresponded with the place where appellee was working. Under these circumstances we think it was competent for these witnesses to describe the condition of the slate before and after the accident and to say that the night before the accident the slate in the roof at this point was loose and that after the accident they discovered that a part of this loose slate had fallen.

Some of these witnesses were permitted, over the objection of counsel for appelllant, to relate what others told them as to the place where appellee was working when injured. But this evidence, although incompetent, was not prejudicial, because, as we have stated, appellee and others described where he was working and the evidence of the witnesses who described the condition of the slate in the roof identified this defective slate as being located at or about the place where the testimony showed appellee was working when injured.

It is urged as a further ground for reversal that the finding of the jury was grossly excessive. We have had more trouble with this feature of the case than any other. Our opinion is that the assessment is larger than the facts warranted; yet this opinion, formed from reading the evidence, would not justify us in setting aside the verdict on this ground, as we cannot say that the verdict is so excessive as to appear to have been given under the influence of passion or prejudice. The jury that tried this case had before them all the evidence that we have, and, in addition to this, heard the witnesses testify, saw the appellee, and heard him describe his injuries, and, in the opinion of the men who sat on the jury, the injuries appellee sustained entitled him to the amount assessed. Under these circumstances it would be an invasion of the power and discretion confided to the jury if we should set up our judgment against theirs and set aside their finding on this issue of fact.

Upon the whole case, we think the judgment should be affirmed, and it is so ordered.